[Civ. No. 4112. Third Appellate District.—July 2, 1930.]

J. & W. C. SHULL (a Corporation), Respondent, v. W. S. BROOKE et al., Defendants; GOLDEN STATE SECURITIES COMPANY et al., Appellants.

Newby & Newby and Dee Holder for Appellants.

Leslie H. Krantz for Respondent.

PULLEN, J., *pro tem.*—This is an action to foreclose a mechanic's lien. Judgment was rendered in favor of the lien claimant, J. & W. C. Shull, a corporation, from which judgment Title Insurance & Trust Company, as trustee, and Golden State Securities Company and Alhambra Hardware Company have appealed.

Defendants W. S. Brooke and Blanche E. Brooke were the owners of a parcel of land in the city of Alhambra, and contemplated the erection of an apartment house thereon. To that end they entered into negotiations with respondents J. & W. C. Shull Corporation to furnish certain lumber, doors, hardware, cement and other building materials. On March 27, 1925, respondents J. & W. C. Shull delivered on the job, upon the order of defendant Brooke, certain lumber which was, prior to the recordation of the trust deed hereinafter referred to, actually used in the building of forms for the concrete foundation of the building, amounting to $78.29. Three days later, or on March 30, 1925, a deed of trust in favor of appellants was placed of record. On April 6, 1925, a so-called written contract was entered into between defendants Brooke and respondents, designating certain described lumber which was to be used in the building, which also included the materials previously furnished on March 27, 1925. The list in the so-called contract totaled some $2,740, and in addition thereto there was purchased from respondents, at the reasonable market value, between March 27 and August 1, 1925, an additional amount of building materials to the value of $1.830. The apartments were not constructed under a general contract for their erection, but were being built by Brooke, as owner.

The first question raised by appellants under the foregoing facts is one of priority. They contend that their rights,

arising under and by virtue of the trust deed, are superior to respondents' as to all material delivered after the date of the recordation of the deed of trust, but inferior to the lien of respondents for all materials delivered by it prior to that date. ■ If the materials furnished or labor performed are under a general contract, then the materialmen and laborers have their liens under the contract, and these liens relate back to the time the building was commenced by the general contractor. ■ On the other hand, as was the situation in the instant case, when the construction of an improvement is at the instance of an owner, as distinguished from a general contractor, then every person furnishing material for the building does so under a separate and distinct contract, and his lien dates from the time he actually furnished the materials or performed the labor. (*McClain* v. *Hutton,* 131 Cal. 132 [61 Pac. 273, 63 Pac. 182, 622].)

■ Appellants contend that at the time of the recordation of the deed of trust respondent was bound by no contract of any kind to deliver to the owner any materials. They urge that the only contract then in existence was the oral contract to deliver the form lumber, which had been done, and therefore, as to any future deliveries, respondent would do so either under a new contract or as a volunteer, and in either position, any claim for materials so delivered would be subordinate to the lien of the deed of trust.

The test is whether, prior to the recording of a deed of trust, the lien claimant had become obligated under some contract or agreement, either oral or written, to deliver the materials which went to make up his lien. If the first delivery of form lumber on the job, by respondent, was under an agreement, separate, independent and distinct from the deliveries subsequent to March 30th, then the lien of respondent could not attach as of the earlier delivery. But the court found, upon sufficient evidence, that on or about March 27, 1925, respondent and defendant entered into a written agreement for certain materials, including the form lumber first delivered upon the job, which agreement bore the date of April 6, 1925, and that deliveries had been made under said agreement prior to the recordation of the deed of trust.

The explanation of the manager of the respondent company, as to the date of the contract, is that the respondent had agreed to supply the building materials prior to March 30th, and when the completed list of materials required were definitely ascertained, he submitted the same, with the prices extended, which was referred to as the "estimate" or contract; and it was upon that testimony the trial court found as already indicated.

Appellants also contend that respondent had actual knowledge or was in possession of information sufficient to put it upon inquiry as to the existence of a deed of trust on March 27th, being three days prior to its reecordation. Section 1186 of the Code of Civil Procedure provides: "The liens provided for in this chapter are preferred . . . to any lien, mortgage or other incumbrance of which the lien claimant had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or materials were commenced to be furnished." They claim, as shown by certain testimony in the record, direct knowledge had been brought to the respondent that a deed of trust had been executed, but that testimony is disputed, and the trial court found against that contention, and an examination of the record discloses sufficient testimony to support the findings of the court of lack of actual notice or knowledge.

Appellants urge that knowledge by a lien claimant that an owner of property is compelled to, and has financed a building to be constructed upon the premises, is sufficient to put such lien claimant on inquiry to ascertain whether or not property which he seeks to hold for payment of materials sold and delivered to the owner, is chargeable with any lien, mortgage or other encumbrance not of record at the time the materials were commenced to be furnished. We do not find the law imposes upon a lienholder any such duty. To argue that the usual or ordinary method of financing construction work is to borrow money upon the premises to be improved, and that such moneys so borrowed will be secured by a mortgage to be thereafter placed of record, and that a materialman with such general information or knowledge is presumed to act at his peril as to the existence of such lien, and cannot safely rely upon

the fact that no mortgage is of record in the proper office, would result in delays, uncertainties and a generally chaotic condition in the building field. A financier about to advance money for the construction of a building can protect himself by inspecting the premises to ascertain if any materials have been delivered on the ground, and if so, can refuse to make any advances under the contemplated plan, which is far superior to depending upon rumor, custom or practice.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 1, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 28, 1930.